IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MS. LEVONE BUTTS *individually and as Executrix of the Estate of Glen Ray Butts, deceased*,<br><br>Plaintiff,<br><br>v.<br><br>LLOYD WEISZ and GEORGIA WEISZ,<br><br>Defendants. | CIVIL ACTION NO.  07-1657 |

**MEMORANDUM OPINION**

CONTI, District Judge.

*Introduction*

This case was filed by Levone Butts ("Levone Butts" or "plaintiff"), individually and as executrix of the estate of her deceased husband, Glen Ray Butts ("Glen Butts" or "plaintiff's husband," and together with plaintiff, the "Butts"), against Lloyd Weisz ("Lloyd Weisz") and Georgia Weisz ("Georgia Weisz," and together with Lloyd Weisz, "defendants").  The court has subject-matter jurisdiction over this diversity action pursuant to 28 U.S.C. § 1332.  The action arises out of an accident that resulted in the death of Glen Butts.  Pending before the court are the parties' cross-motions for summary judgment concerning whether defendants are liable for Glen Butts' death because of their negligence.  Plaintiff moved for partial summary judgment on March 23, 2009 (Doc. No. 23), but that motion was denied by the court without considering its merits (Doc. No. 35); plaintiff filed a renewed motion for partial summary judgment on July 12, 2009 (Doc. Nos. 43, 46).  Defendants moved for summary judgment on July 10, 2009 (Doc. No.

39).  After considering the joint statement of facts and the other submissions of the parties, viewing all disputed facts in favor of the opposing party, and drawing all reasonable inferences in favor of the opposing party, plaintiff's motion for partial summary judgment will be denied, and defendant's motion for summary judgment will be granted.

### *Background*

Levone Butts and her husband, Glen Butts, came to know Lloyd Weisz and Georgia Weisz when the two couples lived in California.  (Pl.'s Statement of Undisputed Material Facts Combined with Defs.' Resps. Thereto (Doc. No. 59) ("Pl.'s CSMF") ¶ 5.)  Defendants moved to a home located at 164 Miller Farms Road, Edinburg, Pennsylvania; plaintiff and her husband maintained their residence in California.  (Defs.' Combined Concise Statement of Material Facts (Doc. No. 58) ("Defs.' CSMF") ¶ 2; Pl.'s CSMF ¶ 2.)

On August 21, 2006, plaintiff and her husband were guests at the home of Lloyd Weisz and Georgia Weisz.  (Defs.' CSMF ¶ 3.)  Plaintiff and her husband arrived at the Pittsburgh International Airport at 5:45 p.m. that evening.  (Defs.' CSMF ¶ 5.)  Defendants picked up plaintiff and her husband and drove them forty-five miles to their home.  (Defs.' CSMF ¶ 5.)  Plaintiff and her husband had not visited defendants' home in Pennsylvania prior to August 21, 2006.  (Pl.'s CSMF ¶ 8.)  Glenn Butts was eighty-four years old on that date.  (Pl.'s CSMF ¶ 15.)

Defendants' home is described as a "ranch-style" house.  The back door of the house opened into a landing area.  A person entering through the back door could proceed straight down a stairwell to the basement, or could turn left and proceed up a single eight-inch stair into the kitchen.  There was no door between the landing and basement stairwell.  (Defs.' CSMF ¶ 4.)  There was a "pocket door" between the landing and the kitchen, but defendants were not aware

of this door at the time of the accident. (Pl.'s CSMF ¶ 29.) There was an overhead lighting fixture at the top of the basement steps. (Pl.'s CSMF ¶ 27.) The light switch for this lighting fixture was not at the top of the basement stairwell, but rather was located outside the landing area above the entryway. (Pl.'s Exs. in Supp. of Renewed Mot. for Partial Summ. J. (Doc. No. 48) ("Pl.'s Ex."), Ex. J at 34-35; Pl.'s Ex. K at 58-61.)

After arriving at defendants' home from the airport, the couples entered the home through the back door; there was ample light in the landing area at the time they entered. (Defs.' CSMF ¶ 6.) Plaintiff's husband and Lloyd Weisz took the Butts' luggage to a guestroom located in the house. (Defs.' App'x (Doc. No. 42), Ex A at 25.). Defendants gave the Butts a tour of the home. (Defs.' CSMF ¶ 8.) The tour was brief, however, because plaintiff and her husband were hungry and wanted to eat dinner. (Defs.' App'x, Ex. A at 26-27.) Defendants took the Butts out to dinner. In exiting the house the couples passed though the back door, and returned through the same door. (Defs.' CSMF ¶ 9.) Georgia Weisz intentionally turned off the light in the landing area after returning. (Pl.'s Ex. C. at 10.)

After dinner, plaintiff and Georgia Weisz sat in the living room of the home, while plaintiff's husband and Lloyd Weisz went into the den area of the home. (Defs.' CSMF ¶ 10.) Plaintiff's husband entered the living room and stated he was going to "use the little boys' room." (Defs.' App'x,, Ex. A at 34-36.) He walked through the home's dining room into the kitchen. (Id.) Plaintiff asserts that the most direct way to the bathroom from her husband's location was through the foyer (Pl.'s CSMF ¶ 20), although the path he took also leads to the bathroom. Georgia Weisz saw plaintiff's husband enter the kitchen, and was confused why he went that way. Georgia Weisz, however, did not tell him that the other direction was the direct route. (Pl.'s Ex. G at 22-23.) Plaintiff's husband did not ask for directions to the bathroom and

did not ask that any lights be turned on. (Defs.' CSMF ¶ 12.) Although plaintiff believed her husband was going in the wrong direction, any concern she had was assuaged by Georgia Weisz's failure to redirect him. (Defs.' CSMF ¶ 13; Defs.' App'x, Ex. A at 36.)

Defendants and plaintiff heard a crash from the landing area. They walked to the basement stairwell and found plaintiff's husband unresponsive at the bottom of the steps. (Defs.' CSMF ¶ 14.) No one saw plaintiff's husband fall. (Defs.' CSMF ¶ 15.) Plaintiff attempted to revive her husband, but was unsuccessful. (Pl.'s CSMF ¶ 44.) Plaintiff's husband was taken to Jameson Memorial Hospital, arriving at 10:08 p.m. (Defs.' CSMF ¶ 16.) Glen Butts was pronounced dead of blunt head trauma. (Pl.'s CSMF ¶ 46.)

At all times when plaintiff's husband passed through the landing area it was amply lit, with the exception of when he fell. The lighting was provided either by natural light or by defendants triggering the light switch. (Defs.' CSMF ¶ 9.) The lighting fixture at the top of the basement stairwell was turned off at the time of the accident. (Pl.'s CSMF ¶ 27.)

Plaintiff retained an architect expert witness, Robert T. Stevens, Jr., R.A. ("Stevens"). Defendants filed a motion to challenge portions of Stevens' testimony (Doc. No. 26). After hearing argument on May 12, 2009 and June 11, 2009, and taking into the consideration briefs and supplemental briefs, the court on the record ruled that Stevens' testimony would be limited to offering an opinion regarding a normal person's gait, the dangerousness of a single step, and the possible injuries that could result from that danger:

> THE COURT: This is all going to the summary judgment phase of this matter. The question is, at this stage, what can this expert testify to? The consequences of how his testimony would be limited may be a matter that the Court would have to probe and resolve on a motion for summary judgment. But at this stage, . . . the nature of the step, the configuration of the step, the nature of the lighting, how a person would normally walk, . . . those are matters that would be appropriate for Mr. Stevens to opine as to.

4

He is not going to be able to opine, however, about the reaching for the light switch, because that's just too speculative. We have no idea if the decedent reached for the switch or didn't reach for the switch. So that would be a matter of pure speculation. Whether what is left in terms of the opinion, whether it's sufficient for proving causation under these circumstances, I would have to resolve at a motion for summary judgment.

. . . .

[DEFENDANTS' COUNSEL]: So I understand, Your Honor, at this point your ruling is that Mr. Stevens would be allowed to testify, would be allowed to testify as to the dangerous condition at the top of the stairs, and to his initial -- to his first scenario, that it's possible that Mr. Butts missed the step, and then, fell to his left?

THE COURT: Depending on the walking; how someone would walk on that kind of step, and that if someone did fall, they could fall, and going down the steps would be something, too, that could have happened.
    But the problem you're going to have, quite frankly, is if there's an equally plausible situation here, I'm not sure that that's sufficient to get past a motion for summary judgment. But I can't resolve that at this stage.

[DEFENDANTS' COUNSEL]: But that's something. So, and we discussed it at the last hearing, that my initial argument would, of course, be with regard to duty, but Your Honor would allow me to challenge the causation element, or the facts in support of the causation element of the negligence claim at a motion for summary judgment?

THE COURT: Whether there's sufficient evidence of causation.

[DEFENDANTS' COUNSEL]: Okay.

THE COURT: I mean, but Mr. Stevens would be able to testify as to how someone would normally walk, the dangerousness of a single step, and that someone could miss the step and fall consistent with the injuries that were received by the decedent, which resulted in his death.
    But he would not be able to testify that he could have also fallen because he was reaching for a light switch which was in a bad location.

(Tr. of 6/11/2009 Hr'g at 9-11.)

Plaintiff also retained a forensic pathologist expert witness, Jonathan Arden, M.D. ("Arden"). Arden opined that "the death of Mr. Butts was caused by blunt impact head injuries received in the fall down the steps." (Pl.'s Ex. N at 2.)

*Standard of Review*

Federal Rule of Civil Procedure 56(c) provides that summary judgment may be granted if, drawing all inferences in favor of the nonmoving party, "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).

The nonmoving party must point to specific affirmative evidence in the record, rather than rely upon conclusory or vague allegations or statements. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Concrete evidence must be provided for each element of each of the claims, and the evidence must be such that a reasonable fact-finder could find in that party's favor at trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). "A nonmoving party, like plaintiff, must 'designate specific facts showing that there is a genuine issue for trial.'" Orenge v. Veneman, No. 04-297, 2006 WL 2711651, at *6 (W.D. Pa. Sept. 20, 2006) (citing Celotex, 477 U.S. at 324).

A motion for summary judgment will not be defeated by the mere existence of some disputed facts, but will be defeated when there is a genuine issue of material fact. Anderson, 477 U.S. at 248. In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. Id. at

249.  The court may consider any evidence that would be admissible at trial in deciding the merits of a motion for summary judgment.  Horta v. Sullivan, 4 F.3d 2, 8 (1st Cir. 1993); Pollack v. City of Newark, 147 F. Supp. 35, 39 (D.N.J. 1956), aff'd, 248 F.2d 543 (3d Cir. 1957) ("in considering a motion for summary judgment, the court is entitled to consider exhibits and other papers that have been identified by affidavit or otherwise made admissible in evidence").

*Discussion*

Pennsylvania law is the controlling substantive law in this diversity action.  To establish a negligence claim under Pennsylvania law, a plaintiff must demonstrate: (1) the defendant owed a duty of care to the plaintiff, (2) the defendant breached that duty, (3) the breach resulted in injury to the plaintiff, and (4) the plaintiff suffered damage.  Martin v. Evans, 711 A.2d 458, 461 (Pa. 1998).

Glen Butts, a social guest of defendants, was a gratuitous licensee.  See Matthews v. DePaul Realty Co., No. 85-1040, 1986 WL 7204, at *2 (E.D. Pa. June 20, 1986) (citing Felix v. O'Brien, 199 A.2d 128 (1964)).  As landowners, defendants undertook a duty to protect Glen Butts when they invited him to their home.  See id.  Pennsylvania courts refer to the Restatement (Second) of Torts § 342 in determining the contours of the duty owed by a landowner to a gratuitous licensee.  Id. (citing Davies v. McDowell Nat'l Bank, 180 A.2d 21 (1962)).  Section 342 makes a possessor of land liable to a licensee for physical harm caused by dangerous conditions known to the possessor that are not made safe and are not warned of:

> A possesser of land is subject to liability for physical harm caused to licensees by a condition on the land if, but only if,
>
> (a) the possessor knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm to such

> licensees and should expect that they will not discover or realize the danger and
>
> (b) he fails to exercise reasonable care to make the condition safe, or to warn the licensees of the condition and risk involved, and
>
> (c) the licensees do not know or have reason to know of the condition and the risk involved.

RESTATEMENT (SECOND) OF TORTS § 342.

With respect to dangerous conditions under Pennsylvania law, a landowner can only be subject to liability for physical harm if the harm is caused by the landowner's negligence concerning that condition. "Pennsylvania courts have adopted the Restatement's 'substantial factor' approach concerning legal causation." Trude v. Martin, 660 A.2d 626, 628 (Pa. Super. Ct. 1995); see RESTATEMENT (SECOND) OF TORTS § 431. Negligent conduct is said to be a legal cause if it is a substantial factor in bringing about the injury. Jones v. Montefiore Hosp., 431 A.2d 920, 923 (Pa. 1981). To be a substantial factor, it need not be the sole factor and need not be quantified as considerable or large, so long as it is significant or recognizable. Jeter v. Owens-Corning Fiberglass Corp., 716 A.2d 633, 636-37 (Pa. Super. Ct. 1998). "'[T]he fact that some other cause concurs with the negligence of the defendant in producing an injury does not relieve defendant from liability unless he can show that such other cause would have produced the injury independently of his negligence.'" Majors v. Brodhead Hotel, 205 A.2d 873, 878 (Pa. 1965) (quoting Carlson v. A. & P. Corrugated Box Corp., 72 A.2d 290, 293 (Pa. 1950)).

In moving for partial summary judgment, plaintiff merely states that "[i]t is undisputed that the fall down the basement stairs caused the death of Mr. Butts. Plaintiff has offered the expert opinion of Jonathan Arden, M.D., in support of this fairly obvious conclusion." (Pl.'s Mem. of Law in Supp. of Mot. for Partial Summ. J. (Doc. No. 44) at 8.) Plaintiff is correct in observing that the parties do not dispute that Glen Butts' fall caused his death. As explained

above, however, the issue is whether a breach of duty on the part of defendants caused Glen Butts' death.  See Cuthbert v. City of Philadelphia, 209 A.2d 261, 263-64 (Pa. 1965).

In responding to defendants' motion for summary judgment, plaintiff argues that this court already litigated the issue whether plaintiff adduced evidence of causation.  The court, however, stated at the June 11, 2009 hearing that whether sufficient evidence of causation exists would be an issue to be decided upon a motion for summary judgment.  After noting the manner in which Stevens' testimony would be limited, the court stated "[w]hether what is left in terms of the opinion, whether it's sufficient for proving causation under these circumstances, I would have to resolve at a motion for summary judgment."  (Tr. of 6/11/2009 Hr'g at 9.)  Counsel for defendants also specifically asked at the hearing whether the sufficiency of the evidence with respect to causation could be challenged upon a motion for summary judgment, and the court made clear that such a challenge would be permissible.

Here, plaintiff failed to adduce sufficient evidence that an alleged breach by defendants caused Glen Butts' death.  The evidence presented by plaintiff in responding to defendants' motion for summary judgment with respect to causation, such as evidence of a dangerous single step, the failure to leave on lights, and the failure to warn or alert Glen Butts of potential danger, relates to whether defendants breached a duty owed to Glen Butts.  This evidence does not establish a causal link between the alleged breaches of duty and the accident.  Plaintiff's expert architect witness, Stevens, offered an opinion about the cause of the accident, i.e., plaintiff's husband was reaching for a light switch, but, upon consideration of defendant's motion to challenge Stevens' opinions, the court held that such testimony is precluded because it was speculative.  For purposes of analyzing the pending summary judgment motions, therefore, the court will limit Stevens' testimony as set forth on the record at the June 11, 2009 hearing.

In moving for summary judgment, defendants argue that Stevens' testimony, as limited for trial purposes, is insufficient to establish causation. Defendants cite <u>Fedorczyk v. Caribbean Cruise Lines, Ltd.</u>, 82 F.3d 69 (3d Cir. 1996), in which Fedorcrzyk, a passenger on a cruise ship, slipped and fell in a bath tub, and sued the ship's operator for negligently causing her injuries.[1] The tub had abrasive strips, but plaintiff did not know whether her feet were on the strips when she slipped. An expert architect witness opined that the strips failed to provide a sufficiently large area of non-slip surface to permit safe use of the tub. <u>Fedorczyk</u>, 82 F.3d at 72.

The court held that the plaintiff did not present adequate evidence of causation. In analyzing the evidence that Fedorczyk submitted to establish causation, the court stated:

> Even though we must draw all legitimate inferences in Fedorczyk's favor, the inference that she was standing between the strips at the time of the accident, because her feet could fit between the strips, is not an appropriate inference to be drawn. The possibility of the existence of an event does not tend to prove its probability. <u>See</u> [<u>Dombrowska v. Kresge-Newark, Inc.</u>, 183 A.2d 111 (N.J. Super. Ct. App. Div. 1962)] (evidence that worn wheel could cause accident insufficient to take to a jury the issue of whether an injury was likely to have been caused by wheel malfunction); <u>see also</u> [<u>Dziedzic v. St. John's Cleaners & Shirt Launderers Inc.</u>, 249 A.2d 382 (N.J. 1969)] (since no evidence introduced on the issue of how plaintiff's positioning in a truck increased her injury in resulting from an automobile accident, jury could only speculate as to whether plaintiff's contributory negligence caused her injuries).
>
> . . . .
>
> Finally, the expert's conclusion that the failure to adequately strip the tub caused Fedorczyk's accident was not legally admissible.
>
> . . . .

---

[1] The Court of Appeals for the Third Circuit applied New Jersey law in <u>Fedorczyk</u>. Under New Jersey law, the court of appeals relied upon the substantial factor approach of the Restatement (Second) of Torts in analyzing causation. <u>Fedorczyk</u>, 82 F.3d at 73.

> Fedorczyk's expert testified that if there had been more stripping, it would be more likely that she would not have fallen. He went on to conclude that the absence of strips caused her to fall. We agree that the more stripping there is in the tub, the less likely it is a person would fall because of inadequate stripping. However, the expert's opinion that inadequate stripping caused Fedorczyk's injuries is not based on any direct or circumstantial evidence of where she was standing when she fell. It is speculative to conclude that the inadequate stripping caused Fedorczyk's injuries when no evidence in the record indicates where Fedorczyk was standing in the tub. It is also speculative to infer that Fedorczyk was standing between the strips at the time of the accident solely from the fact that she fell. Because the expert's conclusion is based on pure speculation, rather than a reasonable inference, it is without foundation and is inadmissable [sic].

Id. at 75. The expert's testimony was admissible to extent he opined that the less adequate the strips the greater the potential to slip, but the Court of Appeals for the Third Circuit recognized that testimony of an increased risk of harm resulting from a party's negligence does not establish that the party's negligence caused the harm. The court relied upon a hypothetical for further explanation:

> A hypothetical illustrates the point. A company provides a stairway in which some of the stairs are defective and some are in fine condition. A person falls on the steps, but does not know which step she fell on. No evidence is introduced that tends to prove she stepped on the defective step. The injured party simply testified that she walked down the steps and fell. We may not reasonably infer that the defective steps probably caused her injury merely because she may have stepped on a defective stair. Without evidence establishing a likelihood that the injured party stepped on the defective stair, a jury would be left to speculate as to the cause of the injury. Simply put, increased risk of harm due to a defendant's negligence, standing alone, does not permit an inference that an injury, more probably than not, was caused by the negligence.

Id. at 75-76. Because the expert's opinion about the cause of the accident was inadmissible, Fedorczyk did not provide direct or circumstantial evidence that the ship operator's negligence caused her injuries. The court granted summary judgment in the ship operator's favor. Id. at 76.

The evidence in this case is analogous to that presented in <u>Fedorczyk</u>. Stevens' testimony is limited to establishing that the conditions of defendants' rear entry foyer area increased the risk of harm that an individual would fall down the stairwell. Evidence establishing an increased risk of harm, however, is not evidence that those conditions caused Glen Butts' fall. Stevens could not testify that Glen Butts could have been reaching for the light because there was no evidence that happened. In other words, the expert would have to speculate to render an opinion with respect to causation. Like the plaintiff in <u>Fedorczyk</u>, plaintiff's husband could have fallen for reasons other than defendants' negligence. Since plaintiff's evidence is not sufficient to raise a genuine issue of material fact with respect to causation, summary judgment must be granted in defendants' favor.

*Conclusion*

Plaintiff did not adduce sufficient evidence with respect to causation, which is a necessary element of her negligence claim against defendants that must be established to support a reasonable jury rendering a verdict in favor of plaintiff. By reason of the lack of existence of genuine issues of material fact with respect to the causation element, partial summary judgment cannot be granted in favor of plaintiff, and summary judgment must be granted in favor of defendants.[2]

---

[2] The court notes that plaintiff moved for partial summary judgment with respect to liability, arguing that defendants breached a duty owed to plaintiff's husband and that the breach caused the death of plaintiff's husband. In addition to moving for summary judgment with respect to the issue of causation, defendants moved for summary judgment with respect to the issue whether defendants breached a duty. The court's decision with respect to the issue of causation is dispositive of the case, and the court does not need to reach the other issues raised by the parties.

For the reasons set forth above, defendants' motion for summary judgment (Doc. No. 39) is **GRANTED**, and plaintiff's motion for partial summary judgment (Doc. Nos. 43, 46) is **DENIED**.

The clerk shall mark this case closed.

By the court:

/s/ Joy Flowers Conti
Joy Flowers Conti
United States District Judge

Dated: February 25, 2010